IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

David Johnson,                                                      Case No. 5:14CV709

      Petitioner,

      v.                                                                **ORDER**

Michelle, Miller, Warden,

      Respondent.

    *Pro se* petitioner David Johnson filed this habeas corpus action under 28 U.S.C. § 2254. (Doc. 1). Johnson, a prisoner in state custody, names Warden Michelle Miller as respondent. I have jurisdiction over the petition under § 2254(a).

    Johnson is serving an aggregate sentence of thirty-one years in prison following his conviction at jury trial of aggravated burglary, aggravated robbery, and disrupting public services.

    In his petition, Johnson raises two grounds for relief: 1) his conviction was against the manifest weight of the evidence and not supported by sufficient evidence; and 2) the trial court erred by imposing consecutive sentences. (Doc. 1 at A).

    The Magistrate Judge to whom I referred the petition has filed a Report and Recommendation (R&R) recommending that I deny the petition in part and dismiss it in part. (Doc. 14). Following a *de novo* review of the R&R, I find the Magistrate Judge correctly concluded that the petition lacks merit.

## Background

    For purposes of habeas corpus review of state court decisions, findings of fact made by a

state court are presumed correct and I can only contravene them if the habeas petitioner shows, by clear and convincing evidence, that the findings were erroneous. 28 U.S.C. § 2254(e)(1); *see, e.g.*, *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530.

Ohio's Fifth District Court of Appeals set forth the following findings of fact in *State v. Johnson*, 2012 WL 6014310, *1-2 (Ohio Ct. App.):

> During the morning of April 24, 2007, Allen Hollar let his Sheltie out the back door of his home on 18th Street in Canton. He waited for the dog to "do his business," let the dog in, and then fell asleep in a chair near the back door. He did not lock the door when he returned inside with the dog.
>
> Hollar woke up when he felt a gun pointed to the side of his head. He saw two black males in his home wearing hoodies, gloves and ski masks. The man holding the gun to his head was wearing a black ball cap. The man said to Hollar, "We need all your cash or I'm going to blow your head off." He repeated this several times. He then frisked Hollar, finding Hollar's billfold containing about $55.00 in cash, credit cards and his driver's license. The man kept asking Hollar for more money. Hollar ran a limousine service out of his home and was known to be paid in cash.
>
> The two men quietly went through the house. A family friend was sleeping in another part of the house and did not wake up. While the dog normally "barks and carries on," he "just kind of laid there and watched what was going on."
>
> Hollar could hear one of the men rummaging through the bedroom closet. The man unplugged the cordless phone in the home and put the handset in his jacket. The robber also went through a filing cabinet before going upstairs. The man holding the gun to Hollar's head kept threatening Hollar, saying that he knew there was more money. He then flipped the dining room table, stuck Hollar's cell phone in his pocket and said, "We know where you live, I'll be back." They then left through the back door. The men spent 15-20 minutes in the house and left with cash, a watch, a bracelet, a necklace, a pinky ring, Hollar's billfold, and two phones.
>
> Hollar watched the men leave by a small path between his garage and the neighbor's garage. The path was surrounded by hedges and a chain link fence. Hollar had a fax machine and a phone disguised as a Cleveland Browns helmet which the robbers had not discovered. He plugged in the fax machine and dialed 911.

> While searching the path where the men retreated, police found a black ball cap identified by Hollar as the cap the robber holding the gun was wearing. The hat was dry, in new condition and untouched by the elements. Police found wet, fresh spit on the path and the tips of two cigars. Police also found fresh shoe prints.
>
> The DNA profile taken from the ball cap and from the spit both came from the same person and, when the profiles were entered into CODIS, they came back with a match to a person named David Johnson. No arrest was made at the time. However, while appellant was incarcerated pending trial on a felonious assault charge in 2011, a search warrant was obtained for his DNA. Appellant's DNA was compared to the items submitted in the 2007 burglary and was found to be a match for the ball cap, the spit and one of the cigarette filters. He also was identified as a possible contributor of DNA found on the second cigarette filter.
>
> The case proceeded to jury trial in the Stark County Common Pleas Court. At the time, appellant was serving a fourteen year sentence for felonious assault with a violent offender specification. Following trial, appellant was convicted of all charges. The trial court merged the two firearm specifications and sentenced him to nine years for aggravated burglary, five years for aggravated robbery, three years for the firearm specification and one year for disrupting public services. He was ordered to serve the sentences for aggravated burglary and aggravated robbery consecutively to each other but concurrently with the sentence for disrupting public services.

(Citations omitted).

On appeal, Johnson asserted the same two grounds for relief he asserts here. *Id.,* *2. On November 29, 2012, the appellate court issued a decision and judgment finding each ground for relief meritless. *See generally id.*

On January 14, 2013, Johnson, *pro se*, timely filed a notice of appeal with the Supreme Court of Ohio. (Doc. 9, Attachment at 66). On March 27, 2013, the Supreme Court of Ohio declined to accept jurisdiction of the appeal, dismissing the case. (*Id.* at 115).

On February 19, 2013, while Johnson's direct appeal was pending before the Ohio Supreme Court, he, *pro se*, timely filed a motion under Ohio Appellate Rule 26(B) with the Ohio appeals court to reopen his appeal. (*Id.* at 116-36). On March 12, 2013, the Ohio court of appeals denied the application to reopen. (*Id.* at 137-39).

3

Johnson, *pro se*, then timely filed an appeal of that decision with the Supreme Court of Ohio. (Id. at 140). On July 24, 2013, the Supreme Court of Ohio declined to accept jurisdiction, dismissing the appeal. (Id. at 161).

The record does not show that Johnson sought a writ of certiorari from the Supreme Court of the United States at any time during the appeals process.

Johnson timely filed the present petition for federal habeas relief on April 1, 2014. (Doc. 1). Johnson's asserts two grounds for relief: 1) insufficient evidence to support the jury's guilty verdict, which was against the manifest weight of the evidence; and 2) the trial court erred by ordering Johnson to serve consecutive sentences. (*Id.* at A).

The State argues I should deny the component of ground one alleging the evidence was insufficient to support conviction because the Ohio appeals court's decision on this matter was not an unreasonable application of clearly established federal law. (Doc. 9 at 10-15). Further, the State contends I should dismiss as non-cognizable claims the component of ground one alleging the verdict was against the manifest weight of the evidence, and all of ground two which contends that the trial court improperly applied Ohio statutory law in imposing consecutive sentences. (*Id.* at 9, 16-18). I find the State's arguments persuasive.

**Discussion**

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 1101 Stat. 1214 (AEDPA), applies to petitions filed after the AEDPA's effective date. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir.2007). The controlling AEDPA provision (codified at 18 U.S.C. § 2254(d)) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that

was adjudicated on the merits in State Court proceedings unless the adjudication of the claim -

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence in the State court proceeding.

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13).

"A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599-600 (quoting *Williams*, 529 U.S. at 413).

"The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The state court's application of clearly established law must be objectively unreasonable." *Id.*

To obtain federal habeas corpus relief, petitioner must establish the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 132 S.Ct. 26, 27 (2011) (citing *Harrington v. Richter*, 562 U.S. 86 (2011)). This standard is "difficult to meet" because "habeas corpus 'is a guard against extreme malfunctions in the state criminal justice

systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 131 S.Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The petitioner carries the burden of proof. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### 1. The Evidence

In essence, Johnson argues the evidence against him was entirely circumstantial and not credible, and therefore no rational trier of fact could have found him guilty. (Doc. 1 at 9-15). I disagree.

On this issue, I must determine whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.*

Consistent with the deference given to the trier of fact's resolution of conflicts in evidence, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326; *see also Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983).

I am not permitted to reweigh evidence or in any way substitute my opinion for that of the trier of fact. *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011) (citing *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)). Due process requirements are satisfied as long as such evidence is enough for a rational trier of fact to make a permissible inference of guilt, as opposed to a reasonable speculation that the petitioner is guilty of the charged crime. *Newman v. Metrish*, 543 F.3d 793, 796-97 (6th Cir. 2008). "[T]he *Jackson v. Virginia* standard is so demanding that '[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)). Not only must I defer to the trier of fact's verdict under Jackson, but also to the state court's consideration of the verdict under AEDPA. *See Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).

In this case, the Fifth District overruled Johnson's insufficiency claim in *Johnson*, 2012 WL 6014310, *2-4:

> In his first assignment of error, appellant argues his convictions are against the manifest weight and sufficiency of the evidence. He argues no one identified him as one of the robbers inside the home, and the items found in the alley with his DNA are only evidence that he was outside the home.
>
> In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"
>
> An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
>
> The elements of an offense may be established by direct evidence, circumstantial evidence or both. Circumstantial evidence is defined as, "'[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other

7

> facts from which deductions are drawn, showing indirectly the facts, sought proved.'"
>
> . . . .
>
> Appellant is correct in noting that Hollar was unable to identify appellant as the man who held a gun to his head, and the evidence in this case is circumstantial. However, Hollar was able to identify the cap found on the secluded path behind his home as the one worn by the man who held the gun to his head. Appellant's DNA was on the hat, which looked new and had not been exposed to the elements as if it had been on the path for a long time. Further, police found fresh spit on the same path which DNA testing revealed to be from appellant. The area was not a public area, and from the DNA evidence collected with the path, coupled with Hollar's testimony as to what occurred in the house and his identification of the hat, the jury could have concluded that appellant and his cohort invaded the home after Hollar left the door unlocked when he let the dog out.
>
> In *State v. James*, 5th Dist. No. 11 CAA050045, 2012-Ohio-966, this Court upheld a conviction for burglary where the evidence linking the appellant to the crime was his DNA found on a discarded cigarette butt in the driveway, and the condition of the butt indicated that it had been left there recently. Similarly, in the instant case the evidence found in the pathway behind Hollar's home was fresh and the DNA found on the items linked appellant to the crime.
>
> The first assignment of error is overruled.

(Citations omitted).

The Fifth District applied the appropriate legal standard and determined that a reasonable juror could have made adequate inferences of guilt from the evidence presented. Johnson's argument that the evidence was insufficient for conviction therefore fails, and I deny that component of Johnson's first ground for relief.

Johnson alternatively asks me to reweigh the evidence presented to the jury. (Doc. 1 at 14-15). I will not, nor am I permitted to, undertake that task. *See Fisher*, 648 F.3d at 450. I therefore dismiss that component of Johnson's first ground for relief.

**2. The Sentence**

Federal habeas relief is available only when the petitioner is in custody in violation of the Constitution, laws or treaties of the United States. 97 28 U.S.C. § 2254(a); *see Engle v. Isaac*, 456 U.S. 107, 119 (1982). It is therefore "not the province of the federal habeas court to reexamine State court determinations on state law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). As the Supreme Court clearly stated in *Lewis v. Jeffers*, 497 U.S. 764, 779 (1990), "federal habeas corpus relief does not lie for errors of state law."

Here, Johnson's argument regarding his sentence is that "the Trial Court erred in imposing consecutive sentences on Petitioner without specifying whether R.C. § 2929.14(C)(a)-(c) applied to Petitioner." (Doc. 1 at 17). As such, this is entirely a question of whether the state court properly applied state sentencing law, and so raises a claim for relief that is not cognizable in this court. I therefore dismiss Johnson's second ground for relief.

**Conclusion**

For the foregoing reasons, it is hereby

ORDERED THAT:

1. Johnson's objections to the Magistrate Judge's Report and Recommendation (Doc. 15) be, and the same hereby are, overruled;

2. The Magistrate Judge's Report and Recommendation (Doc. 14) be, and the same hereby is, adopted; and

3. The petition be, and the same hereby is, denied in part and dismissed in part, with prejudice.

I decline to grant a certificate of appealability, as reasonable jurists could not disagree as to the outcome.

In any event, Johnson could not take an appeal from this decision in good faith, and appeal should not be allowed without prepayment of the requisite filing fee.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge